## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

| | | |
|---|---|---|
| LISA AGAN, | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | |
| v. | } | **Case No.:  4:22-cv-00368-RDP** |
| | } | |
| KILOLO KIJAKAZ, COMMISSIONER | } | |
| OF  SOCIAL SECURITY, | } | |
| | } | |
| **Defendant.** | } | |

### MEMORANDUM OF DECISION

Plaintiff Lisa Agan brings this action pursuant to Section 205(g) of the Social Security Act (the "Act"), seeking review of the decision of the Commissioner of Social Security ("Commissioner") denying her claim for a period of disability and disability insurance benefits ("DIB"). *See also* 42 U.S.C. § 405(g). After review of the record and the briefs submitted by the parties, the court finds that the decision of the Commissioner is due to be affirmed.

### I.    Proceedings Below

Plaintiff filed an application for a period of disability and DIB on August 27, 2020. (R. 100,  115). Plaintiff alleged a disability onset date of March 29, 2014.[1] (R. 100, 115). Plaintiff's date last insured was March 31, 2015.[2] (R. 100, 115). Plaintiff's application was initially denied by the Social Security Administration on September 4, 2020, and again upon reconsideration on

---

[1] Prior to filing the application giving rise to the instant appeal, Plaintiff had previously applied for DIB and SSI on May 5, 2012, alleging a disability onset date of June 1, 2010. (R. 79). These claims were initially denied on June 19, 2012. (R. 79). Thereafter, Plaintiff filed a written request for a hearing on July 10, 2012. (R. 79). On October 23, 2013, the ALJ held a hearing and on March 28, 2014, issued an unfavorable decision. (R. 88).

[2] The medical records relevant to this opinion are within two timeframes – (1) period between the alleged onset date of disability and the date last insured (known as the relevant time period) or (2) within a subsequent period are records that purports to relate back to that time period.

November 9, 2020. (R. 116, 124). On January 8, 2021, Plaintiff filed a written request for a hearing before an Administration Law Judge ("ALJ"). Plaintiff's request was granted, and a telephone hearing was held on August 24, 2021. (R. 33, 128). In attendance were Plaintiff, Plaintiff's counsel, and a Vocational Expert ("VE").

On September 23, 2021, the ALJ rendered an unfavorable decision concluding that Plaintiff was not disabled at any time from her alleged onset date of disability to the date she was last insured under Sections 216(i) and 223(d) of the Act. (R. 27). On March 1, 2022, the Appeals Council denied Plaintiff's request for review of the ALJ's decision. (R. 70). Therefore, the ALJ's decision became the final decision of the Commissioner and a proper subject of this court's appellate review. 42 U.S.C. § 405(g).

At the time of the hearing, Plaintiff was 46-years old and had completed a high school education. (R. 39, 228). Plaintiff alleged she was disabled since March 29, 2014 due to hypothyroidism, anxiety, depression, and degenerative disc disease. (R. 92, 227). Plaintiff had previously worked as a substitute teacher, but stopped working on June 1, 2010 to homeschool her son. (R. 228). Before working as a substitute teacher, Plaintiff worked as a fast food manager and a food prep supervisor in a grocery store. (R. 50-51). Plaintiff alleged that although she stopped working for reasons other than disability, her condition became severe enough on March 29, 2014 to render her unable to work. (R. 227).

During the hearing, Plaintiff gave the specifics about her conditions. She claimed that she first began receiving treatment for depression and anxiety "probably around 2001, 2002, maybe before that" and was still receiving treatment as of the hearing date. (R. 40). Further, Plaintiff testified that depression affects her as "I usually don't want to be around anybody." (R. 39). Plaintiff further stated that she did not do well interacting with strangers; however, when people

come to her home she will socialize and converse with them. (R. 44). Plaintiff testified that since March 2014, for "about a week out of the month" she was unable to get out of bed, dress, or bathe due to depression and anxiety. (R. 40). Plaintiff stated that when she was not feeling well due to her depression she ate more, and experienced weight gain. (R. 44).

Plaintiff also testified that since March 2014 she had difficulty sleeping: "I feel as tired when I wake up if I sleep the recommended eight hours or I sleep 14, 15 hours." (R. 41). Plaintiff stated when she feels tired and has back pain, she would need to take breaks from work for three to four hours during an eight hour workday. (R. 42).

Additionally, Plaintiff testified she suffered from lower back pain due to a scoliosis diagnosis received when she was younger. (*Id.*). Plaintiff claimed she could not lift over thirty pounds. (R. 43). She claimed she could only sit in a normal chair for one or two hours before having to get up, and could only stand in the same spot for one hour before having to move. (*Id.*). When asked which condition was worse during the relevant time period, Plaintiff testified that her anxiety and depression were worse in comparison to her back problems. (R. 43).

Plaintiff indicated that she resided with her disabled husband and her son. Plaintiff's mother previously lived with Plaintiff and her family and would occasionally help with housework but, prior to the hearing, had moved out. (R. 45, 47). Plaintiff must remind her husband to take his medicine, attend his doctor's appointments, and encourage his personal hygiene. (R. 46-47). Plaintiff did a majority of the housework and drove to the store, doctor's appointments, and drive-in movies. (R. 47). Plaintiff homeschooled her son (until 2018) from 5th to 12th grade. (R. 46).

In November 2014, Plaintiff visited the county health department for family planning services and reported a history of depression and thyroid disease, and that she was under the care of her primary medical physician, Dr. Ryan Rainer. (R. 532). Plaintiff's medical history of anxiety

and depression dates back to 2003 and hypothyroidism to 2004, when she was treated at Cherokee Health Clinic. (R. 354). Plaintiff also reported that she was taking HCTZ, thyroxine, fish oil, and medication for depression. (*Id.*). Plaintiff's pharmacy records show that she filled prescriptions for Venlafaxine that were prescribed by Dr. Rainer. (R. 316). The physical exam was noted as normal except with the exception of Plaintiff's obesity. (*Id.*).  Plaintiff submitted an affidavit in June 2021 stating that although she stopped seeing Dr. Rainer in 2013 due to losing her health insurance, he continued to fill her prescriptions until she was an established patient at Quality of Life. (R. 325).

On August 3, 2015, after the relevant time period, Plaintiff became an established patient at Quality of Life (R. 393). During this initial visit, Plaintiff reported that her mood was depressed with diminished interest, but she denied thoughts of death or suicide. (*Id.*). Plaintiff stated she was irritable and reported that she had been taking Venlafaxine for over a year. (*Id.*). However, she did not feel it was helping her like it used to and wanted to try an alternative. (*Id.*). Plaintiff was found oriented to time, place, person, and situation, had appropriate mood and affect, and normal insight and judgment. (R. 397). Plaintiff was prescribed Citalopram. (R. 395, 398). She also reported a history of hypothyroidism. (R. 393). To check Plaintiff's thyroid functioning, Plaintiff was instructed to take Levothyroxine, a hypothyroidism medication, as directed and lab work was ordered. (R. 397).

Plaintiff's next visit to Quality of Life was on August 11, 2015, when she reported that her depression symptoms had improved and that she was doing well on Citalopram. (R. 399). Again, Plaintiff was oriented to time, place, person, and situation, had appropriate mood and affect, and normal insight and judgment. (R. 401). Plaintiff's Levothyroxine prescription was decreased, and it was noted that her hypothyroidism was under "fair control." (R. 401). In November 2015, Plaintiff presented for a follow up visit with a depressed mood, but again reported her depression

symptoms had improved and she was doing well on Citalopram. (R. 403). Plaintiff was in stable condition and directed to take medications as prescribed. (R. 406).

At Plaintiff's next visit on November 10, 2015, she reported that her hypothyroidism was "stable." (R. 403). There was no alteration or modification to her course of treatment or her prescriptions for hypothyroidism after August 2015. (R. 408, 413). Plaintiff's course of treatment did change in March 2018 when she reported that she was not taking Levothyroxine. (R. 429). Plaintiff was given the same prescription again by Quality of Life in March 2018, and continued on that same course of treatment into 2020. (R. 323, 429).

In July 2021, Plaintiff was referred by her attorney to a licensed psychologist, Dr. June Nichols, for an examination of Plaintiff and her medical history. (R. 518). Dr. Nichols examined records from Cherokee Health Clinic between 2003 and 2012, Fyffe Primary/Northeast Alabama Health Services from 2006 to 2021, and Plaintiff's eight visits to Quality of Life. (*Id.*). During this examination, Plaintiff reported experiencing symptoms consisting of depressed mood, diminished interests or pleasure, sleep disturbance, weight change, irritability, poor concentration, anxiety in social settings, forgetfulness, and indecisiveness. (R. 520). Plaintiff further reported that she had few panic attacks. (*Id.*). While  reporting her daily activities, Plaintiff stated she gets up in the morning, cleans, watches TV, feeds the dogs, and plays games on her phone while her husband and son aid in household responsibilities. (*Id.*). Plaintiff reported a varied sleep schedule and that she eats two or three meals a day, attends church, and has friends. (*Id.*).

Dr. Nichols noted that Plaintiff presented neat and clean, her speech was clear and normal in rate, her mood was anxious but congruent with thought process, and her affect was appropriate. (R. 519). Dr. Nichols further noted Plaintiff's stream of conscious was clear, she was orientated to person, place, time, and situation, her thought processes were within normal limits, and there was

no evidence of confusion, loose associations, tangentiality, flight of ideas or thought blocking. (R. 520). Dr. Nichols found no evidence of delusions and he considered Plaintiff's judgment and insight to be good. (*Id.*). Dr. Nichols estimated that Plaintiff was functioning in the "average range of intellectual ability," and noted that she "demonstrated no problems with mental control and attention." (*Id.*). Further, Dr. Nichols found that Plaintiff's "memory functions appear to be grossly intact," explaining that she was able to provide personal history in detail, wake up in the morning, get dressed, and make sure all was well in her home before going to the appointment. (*Id.*). Dr. Nichols found Plaintiff's "general fund of knowledge was adequate"; however, he noted that awareness of current events was poor despite knowing the current president and governor of Alabama. (*Id.*). Finally, he found that, "[Plaintiff's] thinking was abstract in nature," stating that she was able to understand proverbs and other similar tasks adequately. (*Id.*).

Following his examination of Plaintiff and a review of her medical history, Dr. Nichols concluded that Plaintiff's symptoms at the time of the 2021 examination were "consistent with a diagnosis of a Major Depressive Disorder, single episode, and severe" and "meet[] the diagnostic criteria for Generalized Anxiety Disorder." (R. 521). In explaining her conclusions, Dr. Nichols stated that Plaintiff would be able to understand, remember, and carry out simple instructions, but that she would not be able to maintain concentration or pace for periods of two hours. (*Id.*). She further explained that Plaintiff is able to maintain a routine without supervision and adjust to routines and infrequent work changes, adhere to basic standards of neatness and cleanliness, would "likely be off task 20% of an 8 hour day," and "would likely fail to report to work 8-10 days in a 30 day period due to her psychological symptoms." (R. 521). Dr. Nichols opined that "the combination of anxiety and depression interfere in all areas of [Plaintiff's] life." (*Id.*). Dr. Nichols also concluded that these limitations have existed since March 29, 2014. (R. 522).

Plaintiff's medical history of degenerative disc disease and lower back pain were first reported in 2009 at Cherokee Health Clinic. (R. 358). Plaintiff complained of back pain from 2009 to 2012. (R. 359-361). However, during the relevant time period, none of Plaintiff's records indicate complaints of back pain. (R. 362). Plaintiff next complained about lower back pain in 2016 at Quality of Life and was shown improvement techniques such as how to properly lift and carry items, lose weight, alter diet, and remain active to aid with back pain. (R. 363, 411). After this single 2016 visit, the record is void of any medical evidence of lower back pain or complaints of lower back pain until 2020. (R. 367). In July 2020, Plaintiff obtained a lumbar spine x-ray from Fort Payne Imaging. (R. 369, 523). The results from that x-ray showed mild spondylosis and, more specifically mild disc space narrowing. (R. 523).

In September 2020, when filing her reconsideration for disability, Plaintiff reported that she had no new physical or mental conditions. (R. 102). Plaintiff did state, however, that since her last reporting there had been changes to her physical and mental condition. (*Id.*). Plaintiff detailed that, "my back and hips hurt a lot affecting how long I can stand, sit, lay down, reach or lift. My depression and anxiety sometimes keeps me from being social. I don't have a lot of energy most days because of these conditions along with my hypothyroidism." (*Id.*).

On November 5, 2020, the state agency consultant, Dr. Sellman, opined in the Disability Determination Explanation Reconsideration that there was insufficient evidence to rate Plaintiff's claim. (R. 109). Dr. Sellman reported that she "[r]eviewed each initial source and last date of treatment," with Plaintiff and "no new sources submitted as it relate[d] to allegations [made] prior to DLI 3.31.2015." (R. 107). Dr. Sellman further stated that a consultative examination was not required. (*Id.*). Regarding anxiety and depression, Dr. Sellman determined there was "insufficient evidence to substantiate the presence of the disorder." (R. 110). Dr. Sellman concluded that

Plaintiff's thyroid gland disorders, depression, and anxiety were non-severe impairments. (R. 109). After reviewing the entirety of the medical record evidence, she stated, "the current information on file is insufficient to rate the claim as functional information is needed to completely assess [Plaintiff]'s condition prior to the DLI of 3.31.2015." (R. 109). Dr. Sellman opined that Plaintiff was "not disabled." (R. 113).

## II.     ALJ Decision

Disability under the Act is determined under a five-step test. 20 C.F.R. § 404.1520.  First, the ALJ must determine whether the claimant is engaging in substantial gainful activity.  *Id.* § 404.1520(a)(4)(i). "Substantial gainful activity" is defined as activity that is both "substantial" and "gainful." *Id.* § 1572.  "Substantial" work activity is work that involves doing significant physical or mental activities.  *Id.* § 404.1572(a). "Gainful" work activity is work that is done for pay or profit. *Id.* § 404.1572(b). If the ALJ finds that the claimant engages in activity that meets both of these criteria, then the claimant cannot claim disability.  *Id.* § 404.1520(b). Second, the ALJ must determine whether the claimant has a medically determinable impairment or a combination of medical impairments that significantly limits the claimant's ability to perform basic work activities.  *Id.* § 404.1520(a)(4)(ii).  Absent such impairment, the claimant may not claim disability. *Id.*  Third, the ALJ must determine whether the claimant's impairment meets or medically equals the criteria of an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1.  *See id.* §§ 404.1520(d), 404.1525, and 404.1526.   If such criteria are met, the claimant is declared disabled. *Id.* § 404.1520(a)(4)(iii).

If the claimant does not fulfill the requirements necessary to be declared disabled under the third step, the ALJ may still find disability under the next two steps of the analysis.  The ALJ must first determine the claimant's residual functional capacity ("RFC"), which refers to the claimant's

ability to work despite her impairments. *Id.* § 404.1520(e). In the fourth step, the ALJ determines whether the claimant has the RFC to perform past relevant work. *Id.* § 404.1520(a)(4)(iv). If the claimant is determined to be capable of performing past relevant work, then the claimant is deemed not disabled. *Id.* If the ALJ finds the claimant unable to perform past relevant work, then the analysis proceeds to the fifth and final step. *Id.* § 404.1520(a)(4)(v). In the last part of the analysis, the ALJ must determine whether the claimant is able to perform any other work commensurate with her RFC, age, education, and work experience. *Id.* § 404.1520(g). Here, the burden of proof shifts from the claimant to the ALJ to prove the existence, in significant numbers, of jobs in the national economy that the claimant can do given her RFC, age, education, and work experience. *Id.* §§ 404.1520(g), 404.1560(c).

Here, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since her alleged onset date through her date last insured, and that she had the severe impairments of hypothyroidism and obesity, satisfying steps one and two of the analysis. (R. 22).

The ALJ further determined Plaintiff's alleged depression, anxiety, and degenerative disc disease were not severe impairments. (R. 23). The ALJ reasoned that the medically determinable impairment of depression "did not cause more than minimal limitation in [Plaintiff's] ability to perform basic mental work activities and was therefore, nonsevere." (R. 22). The ALJ reasoned that the medical records made available during and immediately following the relevant time period in relation to Plaintiff's depression, point to prescription records, as well as records from Quality of Life, that indicate Plaintiff reported "symptoms were improved" and she was "doing well." (R. 22).

The ALJ then addressed Dr. Nichols's opinion, which was the only medical opinion in the record. (R. 22). The ALJ described the findings of Dr. Nichols's examination of Plaintiff, detailed

her conclusions, and inferred that Dr. Nichols's opinion was unpersuasive because the opinion was not supported by her own exam findings and was inconsistent with Plaintiff's treatment records. (R. 23). The ALJ further supported this finding after considering the broad functional areas of mental functioning as set out in the disability regulations finding Plaintiff's medically determinable mental impairment

> caused no more than 'mild' limitation in any of the functional areas and the evidence does not otherwise indicate that there is more than a minimal limitation in [Plaintiff's] ability to do basic work activities, and it was nonsevere.

(R. 23).

The ALJ also determined that Plaintiff's alleged degenerative disc disease and low back pain were nonsevere impairments. (R. 23). The ALJ noted that there must be objective medical evidence from an acceptable medical source to establish the existence of a medically determinable impairment. (R. 23). Further, the ALJ stated that when a claimant alleges certain symptoms, but the medical evidence does not substantiate the medically determinable impairment producing the claimant's alleged symptoms, the ALJ will not evaluate the subjective testimony of the symptoms. (R. 23). The ALJ concluded that Plaintiff's records during the relevant time period, as well as records from after the time period, do not show the objective medical evidence needed to establish a medically determinable impairment of degenerative disc disease or other causes for Plaintiff's lower back pain. (R. 23-24).

At step three of the analysis, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. §§ 404.1520(d), 404.1525 and 404.1526. The ALJ noted that no examining or treating source reported Plaintiff had an impairment that met the criteria of one of the listed impairments. (R. 24).

The ALJ next evaluated the record and the VE's testimony and determined Plaintiff's RFC. (R. 26-27, 65). In response to the hypothetical questions posed by the ALJ during the hearing, the VE testified that someone of a younger age, with Plaintiff's education and work experience, could perform work at a light level of exertion, such as a fast food manager or substitute teacher. (R. 52). The VE added that, if the person had a non-exertional limitation they would be able to perform jobs such as a ticket seller, school bus monitor, or remnant sorter. (*Id.*). Additionally, the VE added that if the same person was restricted to unskilled work and occasional interactions with the general public, the jobs they could perform were remnant sorter, office helper, and garment sorter. (*Id.*).

Plaintiff's attorney asked the VE about the maximum amount of absenteeism generally tolerated in the jobs he testified to. (R. 54). Regarding unskilled work, the VE answered that "once a month" absenteeism is tolerated and "[t]hree or more days absent would be considered excessive." (*Id.*). Further, the VE stated that being off task less than ten percent of the time is not acceptable because that would not allow an individual to complete an eight-hour work week. (*Id.*). The attorney then posed a hypothetical question asking if a "person of [Plaintiff]'s age, education, and work experience [was required] to lie down over three hours in an eight-hour workday," if that would be tolerated in the jobs identified. The VE responded that "would eliminate work." (R 54-55).

The ALJ concluded that Plaintiff was limited to performing light work as defined at 20 C.F.R. § 404.1567(b) within limitations, she could occasionally climb ramps and stairs (but never climb ladders, ropes, or scaffolds), and she could occasionally stoop, kneel, crouch, and crawl, but needed to avoid exposure to hazards such as unprotected heights and hazardous machinery. (R. 24). The ALJ reached this conclusion by determining that while Plaintiff's medically determinable impairments could reasonably be expected to cause some of her symptoms stated in the record,

Plaintiff's statements concerning the intensity, persistence, and limiting effects of these symptoms "are not entirely consistent with the medical evidence and other evidence in the record." (R. 25).

Relying on Plaintiff's activities of daily living, medical signs, laboratory findings, and third party statements, the ALJ detailed that Plaintiff's obesity alone or in combination with her other medically determinable impairments significantly limited her physical ability to do basic work activities, and that Plaintiff was unable to perform any past relevant work through the date last insured. (R. 25-26). However, the ALJ found that through the date last insured, when considering Plaintiff's age, education, work background, and RFC, there were jobs in the national economy that Plaintiff could perform. (R. 27). Therefore, the ALJ found Plaintiff was not disabled as defined in the Act at any time from March 29, 2014 through March 31, 2015. (R. 28).

## III.   Plaintiff's Argument for Remand or Reversal

Plaintiff seeks to have the Commissioner's decision reversed and to be awarded benefits or, in the alternative, to have this action remanded for further consideration. (Doc. 18, p. 20). Plaintiff argues that the ALJ's decision is not supported by substantial evidence and that incorrect legal standards were applied because the ALJ: (1) failed to properly evaluate and articulate, pursuant to 20 C.F.R. § 404.1520c, the reasons for discrediting Dr. Nichols's opinion; (2) failed to properly assess the consistency of Dr. Nichols's opinion because there were limited records for review and the ALJ should have ordered a consultative examination ("CE"); (3) erred when rejecting the only medical opinion of her mental health and inserted her own medical opinion; and (4) misapplied the Eleventh Circuit pain standard when she failed to find a medically determinable impairment that could have reasonably caused her pain. (Doc. 18, pp. 10, 14, 15, 17).

## IV.    Standard of Review

The only issues before this court are whether the record reveals substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the correct legal standards were applied. *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Title 42 U.S.C. § 405(g) mandates that the Commissioner's findings are conclusive if supported by "substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is reasonable and supported by substantial evidence. *See id.* (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 894 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted). If supported by substantial evidence, the Commissioner's factual findings must be affirmed even if the evidence preponderates against it. *See Martin*, 894 F.2d at 1529. While the court acknowledges that judicial review of the ALJ's findings is limited in scope, the court also notes that review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701. Legal standards are reviewed *de novo*. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005).

## V.    Discussion

### A.    The ALJ Properly Evaluated the Opinion of Dr. Nichols.

Plaintiff first argues that the ALJ erred in dismissing Dr. Nichols's opinion without following the requirements of 20 C.F.R. § 404.1520c. (Doc. 18, p. 3). More specifically, she contends that the ALJ improperly evaluated Dr. Nichols's opinion by not sufficiently articulating

the consistency factor of the new regulations, thereby providing only "conclusory statements." (Doc. 18, p. 10-11).

The regulatory framework for reviewing medical evidence has changed for claims filed after March 27, 2017. *Id*. Because Plaintiff filed her application on August 27, 2020, the new regulations apply. *Id*., *see Glover v. Comm'r*, No. 22-10497, 2022 U.S. App. LEXIS 35248, at *6 (11th Cir. 2022). Under the new regulations, an ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative finding(s), including those from [Plaintiff's] medical sources." *Id*. § 404.1520c(a). Rather, an ALJ must evaluate each medical opinion using five factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors. *Id*. § 404.1520c(c). Further, an ALJ must state in the written decision the extent to which they find the medical opinions and prior administrative medical findings in the record persuasive. *Id*. § 404.1520c(b). Supportability and consistency are the most important factors an ALJ considers when determining the persuasiveness of medical source opinions. *Id*. § 404.1520c(b)(2). And, an ALJ is required to explain how they considered the supportability and consistency factors for a medical source's medical opinions in making their determination or decision. *Id.* However, the ALJ is not required to explain how they considered the other factors. *Id.*

Under the new regulations, "supportability" refers to the principle that the more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s). . . the more persuasive the medical opinions will be. *Id*. § 404.1520c(c)(1); *Walker v. SSA*, No. 21-12732, 2022 U.S. App. LEXIS 9089, at *5 (11th Cir. 2022). "Consistency" refers to the principle that the more consistent a medical opinion(s). . . is with the evidence from other medical sources and nonmedical sources in the claim, the more

persuasive the medical opinion(s). . . will be. *Id.* § 404.1520c(c)(2); *Walker*, 2022 U.S. App. LEXIS 9089, at *6. Further, the ALJ considers evidence to be inconsistent if it conflicts with other evidence or contains internal conflict. *Id.* § 416.920b(b).

Here, the ALJ found the medical opinion of Dr. Nichols inconsistent with and unsupported by other medical evidence in the record and thus determined it was unpersuasive under § 404.1520c(c)(2). (R. 23). Dr. Nichols's opinion is based on a review of records and her examination of Plaintiff after Plaintiff's last insured date of March 31, 2015. (R. 518). Dr. Nichols examined Plaintiff in July 2021. (R. 518). To the extent her opinion relates back to the relevant period, Dr. Nichols reviewed Plaintiff's medical history and records ranging from 2003 to 2021, which included records from Plaintiff's alleged onset date, March 29, 2014, to her date last insured, March 31, 2015, that were part of the administrative record and addressed by the ALJ. (R. 22, 23, 518). Dr. Nichols's diagnostic impressions were that Plaintiff has major depressive disorder, panic disorder, and generalized anxiety disorder. (R. 23, 521). Dr. Nichols opined that since March 29, 2014, Plaintiff was able to understand, remember, and carry out very short and simple instructions but could not maintain attention, concertation, and/or pace for periods of two hours. (R. 23, 521). On exam, Plaintiff's thought processes were within normal limits with no evidence of confusion, she demonstrated no problems with mental control or attention, her memory functions appeared to be grossly intact, her general fund of knowledge was adequate, and her thinking was abstract in nature. (R. 520). Dr. Nichols opined that Plaintiff would likely be off task 20% of an eight-hour day, and she would likely fail to report to work eight to ten days in a thirty-day period due to her psychological symptoms. (R. 23, 521).

Following that examination of Plaintiff and her records, Dr. Nichols opined that "the combination of anxiety and depression interfere in all areas of [Plaintiff's] life." (R. 521). The ALJ

determined Dr. Nichols's opinion was unpersuasive because her conclusions were "not supported by her exam findings, and they are not consistent with [Plaintiff's] treatment records or her reported activities of daily living." (R. 23).

Plaintiff contends that although the ALJ articulated why Dr. Nichols's opinion was not supported, the ALJ failed to articulate why Dr. Nichols's opinion was not consistent with the record and erred for that reason. (Doc. 18, p. 3; Doc. 20, p. 1). Plaintiff argues that the ALJ's only discussion of the consistency of Dr. Nichols's opinion is the following sentence: "[t]he undersigned find Dr. Nichols's opinions unpersuasive because . . . they are not consistent with the claimant's treatment records or her reported activities of daily living." (R. 23).

The court disagrees. As explained below, the ALJ specifically discussed Plaintiff's treatment records, Dr. Nichols's own examination, and Plaintiff's activities of daily living to show inconsistency with Dr. Nichols's opinion. (R. 22-25).

### 1.    Dr. Nichols's Opinion is Inconsistent With Her Examination Observations.

The ALJ discussed specific evidence noted in Dr. Nichols's examination that both was unsupported by and inconsistent with her opinion. Plaintiff contends that the ALJ's discussion of Dr. Nichols's opinion articulates the supportability factor only and not the consistency factor. (Doc. 18, p. 12).

An ALJ need not use any "magic words" in discussing whether a medical source is supported by evidence from the medical source itself or whether the opinion is consistent with other evidence. *See Thaxton v. Kijakazi*, No. 1:20-CV-00616-SRW, 2022 U.S. Dist. LEXIS 58125, at *8 (M.D. Ala. 2022); *see also Cueva v. Kijakazi*, No. 1:20-CV-000407-BAM, 2021 U.S. Dist. LEXIS 175765, at *5 (E.D. Cal. 2021) (holding that "[a]n ALJ need not recite any magic words to

reject a physician's opinion where the record reveals specific, legitimate inferences that may be drawn from the ALJ's opinion justifying the decision not to adopt a physician's opinion.").

The ALJ noted that Dr. Nichols's opinion was "not supported by her exam findings," and the record evidence permits legitimate inferences to be drawn as to the inconsistencies between Dr. Nichols's opinion and the examination of Plaintiff. *See Thaxton v. Kijakazi*, No. 1:20-CV-00616-SRW, 2022 U.S. Dist. LEXIS 58125, at *8 (M.D. Ala. 2022); *see also Cueva*, 2021 U.S. Dist. LEXIS 175765, at *5. For example, there were internal inconsistencies between her opinion and her examination related to Plaintiff's thought processes being within normal limits with no evidence of confusion, her experiencing no problems with mental control or attention, her memory functions appearing to be grossly intact, her general fund of knowledge being adequate, and her thinking being abstract in nature. (R. 23).

Despite these observations, Dr. Nichols concluded that Plaintiff's anxiety and depression "interfere in all areas of [Plaintiff's] life." (R. 521). The record evidence permitted the ALJ to draw legitimate inferences as to the internal inconsistencies between the examination and Dr. Nichols's ultimate opinion. 20 C.F.R. § 416.920b(b). Therefore, the ALJ applied the proper legal standards in articulating both the supportability and consistency factors, and substantial evidence supports the finding that Dr. Nichols's opinion was unpersuasive.[3]

### 2.    Plaintiff's Treatment Records and Activities of Daily Living are Inconsistent with Dr. Nichols's Opinion.

An ALJ may refer to evidence discussed elsewhere in the decision when evaluating medical opinions or prior administrative findings. *See Pariseau v. Comm'r of Soc. Sec.*, No. 2:20-cv-01224, 2022 WL 4277295, at *7 n.5 (N.D. Ala. 2022) quoting *Rice v. Barnhart*, 384 F.3d 363, 370 (7th

---

[3] While the ALJ did not expressly reference the word "consistency" when referring to Dr. Nichols's examination, the court agrees that Dr. Nichols's examination observations are inconsistent with his opinion.

Cir. 2004). In *Pariseau*, the ALJ concluded that the medical opinion was not persuasive because it was not consistent with and was not supported by the doctor's own internally inconsistent explanations and other medical evidence in the record. *Id.* at *7. The claimant in that case argued that the ALJ did not discuss the treatment records in regard to the supportability and consistency factors. *Id.* However, that court determined that the consideration of the medical records elsewhere in the decision was sufficient to explain the ALJ's findings as to consistency and supportability. *Id.* at *8.

Here, Plaintiff argues that the Commissioner is "filling in the gaps" of the ALJ's reasoning. (Doc. 20, p. 4).  To the contrary, the court concludes that the treatment records and activities of Plaintiff's daily living were discussed by the ALJ in a sufficient manner to show the inconsistencies of Dr. Nichols's opinion. And, the ALJ's discussion on the inconsistency of Dr. Nichols's opinion elsewhere does not undermine the ALJ's evaluation of that factor. *See Hutson v. Comm'r, Soc. Sec. Admin.*, No. 6:21-cv-01495, 2023 WL 2634037, at *5 (N.D. Ala. 2023) (holding that "the court does not interpret the new regulations or the case law to require an ALJ to structure her discussion of a medical source's medical opinions in a particular way."). That is, while the ALJ did not immediately follow her statement explaining why Dr. Nichols's opinion was unpersuasive and inconsistent, the ALJ discussed elsewhere in her decision the specific medical evidence in relation to the inconsistency of Dr. Nichols's opinion. *See id.* The ALJ noted that during the relevant time period Plaintiff filled prescriptions for Venlafaxine. (R. 22). The ALJ also discussed Plaintiff's Quality of Life treatment records indicating that during her first visit, in August 2015, she reported that her mood was depressed, and she wanted to try an alternative prescription to Venlafaxine. (R. 22). During that visit, Dr. Mackey's impression was "Depression, Chronic" and Plaintiff was prescribed Citalopram. (R. 22, 393-97). At follow up appointments, on

August 11 and November 10, 2015, Plaintiff reported that her symptoms were improved and that she was doing well on the new medication. (R. 22). Directly following the evaluation of these treatment records, the ALJ discussed Dr. Nichols's opinion, which is in "direct conflict" with those records. (R. 22-23; 20 C.F.R. § 404.1520c(c)(2)). Plaintiff's treatment records discussed by the ALJ, on their face, are inconsistent with Dr. Nichols's opinion. The ALJ applied the proper legal framework in determining Dr. Nichols's opinion as unpersuasive pursuant to 20 C.F.R. § 404.1520c(c)(2).

Regarding Plaintiff's activities of daily living, the ALJ discussed Plaintiff's testimony and noted "[Plaintiff's] activities of daily living do not support the presence of disabling symptoms during the relevant period," thus marking the inconsistency between Dr. Nichols's opinion and the record evidence. (R. 25). Again, the ALJ did not immediately follow her statement regarding the persuasiveness of Dr. Nichols's opinion with statements regarding the specific evidence of Plaintiff's activities of daily living that are inconsistent with each specific statement from her opinion. However, the ALJ discussed the inconsistency of Dr. Nichols's opinion elsewhere in her discussion. *See Hutson*, 2023 WL 2634037, at *5. Further, activities of daily living is evidence "probative of a claimant's abilities and is a permissible source of evidence under the regulations." *Adams v. Comm'r, Soc. Sec. Admin.*, No. 4:21-cv-01300, 2023 WL 2025221, at *6 (N.D. Ala. 2023). The ALJ both found and sufficiently articulated that the activities of daily living, similar to Plaintiff's treatment records, were inconsistent to Dr. Nichols's opinion. Plaintiff's self-reported activities of daily living during the relevant time period included caring for her disabled husband by reminding him to take his medication and maintain personal hygiene, as well as keeping track of his doctor's appointments. Further, Plaintiff managed the household finances and did most of the household chores. Plaintiff also homeschooled her son and drove to the store and her husband's

medical appointments. As such, the ALJ applied the proper legal framework in determining Dr. Nichols's opinion was unpersuasive pursuant to 20 C.F.R. § 404.1520c(c)(2).

Because case law does not that dictate how an ALJ must organize a discussion of a medical opinion, and because the treatment records and activities of daily living (discussed and cited by the ALJ) were inherently in direct conflict with and inconsistent to Dr. Nichols's opinion, it is apparent that the ALJ properly articulated her reasons for finding Dr. Nichols's opinion unpersuasive regarding both the supportability and consistency factors. 20 C.F.R. § 404.1520c; 20 C.F.R. § 416.920b(b).

Substantial evidence supports the ALJ's determination that Dr. Nichols's opinion was unpersuasive, based on a consideration of the consistency and supportability of the medical opinion evidence and other medical and non-medical findings in accordance with the SSA's new regulatory scheme. It was up to the ALJ to determine the persuasiveness of Dr. Nichols's opinion, which suggested more severe limitations for the relevant time period than those noted by other doctors in records related to exams that were closer in time to the relevant time period. (R. 22). The court therefore determined that the ALJ did not err in the articulation of the consistency factors.

### B.    The ALJ Did Not Err By Not Ordering a Consultative Examination.

Plaintiff argues that the ALJ "failed to assess the consistency of the Nichols['s] Opinion with the record because of the limited records available for review, [and] should have ordered a consultative examination." (Doc. 18, p. 14). The court disagrees.

An ALJ has "a basic obligation to develop a full and fair record," and this duty includes ordering a CE if necessary to make an informed decision. *See Smith v. Comm'r of Soc. Sec.*, 501 F. App'x 875, 878 (11th Cir. 2012); *see also Holladay v. Bowen*, 848 F.2d 1206, 1209 (11th Cir. 1988). However, an ALJ is not required to order a CE where the record contains sufficient evidence

for the ALJ to make an informed decision. *See Mabrey v. Acting Comm'r*, 724 F. App'x 726, 729 (11th Cir. 2018); *see also Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1269 (11th Cir. 2007). A claimant bears the burden of proving disability and is responsible for furnishing or identifying medical and other evidence regarding his or her impairments. *See Smith*, 501 F. App'x at 878; *see also Mabrey*, 724 F. App'x at 729. A claimant must show that she was prejudiced by the ALJ's failure to develop the record before a due process violation will justify a remand. *See id.* In determining prejudice, a court is guided by whether the record reveals evidentiary gaps that resulted in unfairness or clear prejudice. *See Smith*, 501 F. App'x at 878; *see also Graham v. Apfel*, 129 F.3d 1420, 1423 (11th Cir. 1997). A legal argument that has not been briefed before the court is deemed abandoned. *Glover*, 2022 U.S. App. LEXIS 35248, at *8.

Plaintiff relies on *Bradford v. Soc. Sec. Admin.* in support of her remand argument. (Doc. 18, p. 14); 7:21-cv-00129-LSC, 2022 U.S. Dist. LEXIS 136108 (N.D. Ala. 2022). In *Bradford*, there was one medical opinion offered and the ALJ only evaluated the supportability factor set forth in the new regulations with no articulation of the consistency factor. *Bradford*, 2022 U.S. Dist. LEXIS 136108, at *10; 20 C.F.R. § 404.1520c. Further, in that case the Commissioner argued that there would be no consistency finding due to a lack of other medical or non-medical sources. *Bradford* at *10. Here, neither the ALJ nor the Commissioner made note of a lack of medical sources or non-medical sources in the record. The only one who has commented on the lack of medical records in the instant case is Plaintiff in her Opening Brief. (Doc. 18, p. 2, 14). The *Bradford* case is distinguishable here as the court finds the ALJ did evaluate and articulate both the supportability and consistency factor as explained above. (R. 22-23).

There was sufficient record evidence for the ALJ to make an informed decision. This is not a case where the ALJ failed to sufficiently articulate the consistency factor of Dr. Nichols's opinion

or the Commissioner acknowledged that there was no record (or a limited record) for a proper consistency assessment. (Doc. 18, p. 14-15). It was unnecessary for the ALJ to request a consultative examination. The court concludes there was sufficient evidence available for the ALJ to make an informed decision, and there was no prejudice. *Glover*, 2022 U.S. App. LEXIS 35248, at *8.

### C.      The ALJ Did Not Impermissibly Substitute Her Own Opinion For That of Dr. Nichols's Opinion.

Next, Plaintiff argues that the ALJ impermissibly substituted her own opinion for that of Dr. Nichols's opinion by rejecting "the only medical evidence and replaced it with her own opinion." (Doc. 18, p. 15). Plaintiff further contends that the ALJ rejected the only medical opinion as to her mental health by relying "simply on [Plaintiff's] daily activities." (Doc. 18, p. 16). Neither of the assertions hit the target.

An ALJ may not substitute her own opinion of a claimant's condition for that of a medical professional. *Medders v. SSA*, No. 4:20-cv-00611-ACA, 2021 U.S. Dist. LEXIS 111885, at *10 (N.D. Ala. 2021); *Freeman v. Schweiker*, 681 F.2d 727, 731-32 (11th Cir. 1982). Further, an ALJ may not make her own medical findings. *See Ybarra v. Comm'r of Soc. Sec.*, 658 F. App'x 538, 543 (11th Cir. 2016). The ALJ's responsibility is "to resolve conflicting medical opinions." *Id.* "Were courts to find that ALJs impermissibly substitute their own opinions for those of medical experts any time ALJs reject the opinions of those medical experts, the ALJ's role in Social Security proceedings would be essentially meaningless." *See Snow v. Colvin*, 8 F. Supp. 3d 1345, 1353 (N.D. Ala. 2014) citing *Miles v. Chater*, 84 F.3d 1397, 1401 (11th Cir. 1996).

Here, Plaintiff cites a number of cases for the general proposition that an ALJ may not substitute her own opinion for that of a medical expert, but she offers no specific argument regarding how the ALJ did so in this case. (Doc. 18, p. 15-16). Further, Plaintiff's assertion that

the ALJ rejected the "*only* medical evidence" on record is off the mark as Plaintiff's treatment records show otherwise. (Doc. 18, p. 15; R. 22-25) (emphasis added). Nor is Plaintiff correct in arguing that the ALJ only relied on her activities of daily living when rejecting Dr. Nichols's opinion. (Doc. 18, p. 16). Rather, the ALJ reviewed Plaintiff's treatment records, her activities of daily living, and Dr. Nichols's own observations in finding Dr. Nichols's opinion unpersuasive. (R. 22-25). The ALJ considered Plaintiff's broad functional areas of mental functioning (as set out in the disability regulations) in finding that Plaintiff had only mild limitations in her ability to perform basic mental work activities during the relevant period. (R. 23; 20 C.F.R. § 404). Therefore, the ALJ did not substitute her opinion for that of Dr. Nichols but rather properly assessed the objective medical evidence pursuant to the new regulations.

### D.   The ALJ Properly Applied the Pain Standard in Assessing Plaintiff's Alleged Degenerative Disc Disease.

Plaintiff's final argument is that the ALJ misapplied the Eleventh Circuit pain standard when finding her alleged degenerative disc disease did not constitute a medically determinable impairment. (Doc. 18, p. 17-19). This contention is unavailing.

The Eleventh Circuit has an established pain standard that applies when a claimant attempts to establish disability through their own subjective testimony. Under the pain standard, a claimant must show:

> (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

*Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991); *Landry v. Heckler*, 782 F.2d 1551, 1553 (11th Cir. 1986). If the ALJ discredits a claimant's subjective testimony, the ALJ must give explicit and adequate reasons for doing so. *Wilson v. Barnhart*, 284 F. 3d 1219, 1225 (11th Cir. 2002). If an ALJ fails to articulate why there was a refusal to credit a claimant's subjective testimony, the

subjective testimony must be accepted as true. *See Hale v. Bowen*, 831 F.2d 1007, 1012 (11th Cir. 1987).

At the same time, though, a claimant must show she was disabled between her alleged onset date and the date last insured. *See Mason v. Comm'r of Soc. Sec.*, 430 F. App'x 830, 831 (11th Cir. 2011). And, evidence of a disability that came into existence after the date last insured cannot serve as a basis for finding disability during an earlier time period. *See Edwards v. Comm'r*, No. 6:20-cv-00715-HNJ, 2021 U.S. Dist. LEXIS 155901, at *21 (N.D. Ala. 2021). Therefore, records that relate to a period after a claimant's last insured date are relevant only to the extent they may show the severity of a claimant's impairments during the relevant period. *Id.*

During the hearing, Plaintiff alleged lower back pain due to degenerative disc disease. (R. 39). Specifically, Plaintiff stated, "I have low back pain that they decided are degenerative discs. It bothers me a lot." In testifying about her lower back pain, Plaintiff stated that when she was younger she was diagnosed with scoliosis that she believes caused her lower back pain. (R. 61). Plaintiff testified that during the relevant time period, she had trouble lifting things and would not lift anything over "20 or 30 pounds" out of fear it would "mess up her back." (*Id.*). Further, Plaintiff reported she could not sit in a normal chair for more than one to two hours or stand in one spot for more than one hour. (R. 62). The ALJ determined that Plaintiff's subjective testimony regarding her lower back pain due to degenerative disc disease was not credible because the record did not contain objective medical evidence establishing a medically determinable impairment. (R. 23).

Here, Plaintiff argues that there *is* objective medical evidence supporting her claim. Plaintiff points to evidence from a prior 2014 decision to show that she has an underlying medical impairment. (Doc. 18, p. 18-19). However, the ALJ was not required to rely on any of the findings from that previous decision, which are notably outside the scope of the relevant time period. *See*

*Griffin v. Comm'r of Soc. Sec.*, 560 F. App'x 837, 844 (11th Cir. 2014) (holding that an ALJ is not required to rely on or consider objective medical evidence from prior decisions); *Merritt v. Comm'r of Soc. Sec.*, No. 17-cv-712, 2018 WL 4761586, at *6-7 (M.D. Fla. May 11, 2018) ("[i]t is Plaintiff's burden to establish her disability during the relevant time period, the time between her alleged onset date and date last insured.").

Plaintiff also points to medical records *after* the relevant time period to show that her disabling symptoms grew in severity.[4] (R. 24; Doc. # 18 p. 19); *see Edwards*, 2021 U.S. Dist. LEXIS 155901, at *21. However, Plaintiff did not have any disabling symptoms that were evident during the relevant period that called for the ALJ to examine whether they grew in severity.

Here, the ALJ correctly noted that there must be "objective medical evidence from an acceptable medical source to establish the existence of a medically determinable impairment" to support Plaintiff's subjective testimony. (R. 23); *see Hale*, 831 F.2d at 1012. The ALJ found that there was no objective medical evidence during the relevant time period. (R. 24). None of the medical records from March 29, 2014 to March 31, 2015 note that Plaintiff complained of lower back pain or indicated any objective evidence of lumbar spine abnormalities. (R. 23-24). Further, the ALJ evaluated records after the relevant time period that did not show Plaintiff had disabling symptoms that had grown in severity. (R. 24); *see Edwards*, 2021 U.S. Dist. LEXIS 155901, at *21. For the reasons stated above, the ALJ correctly applied the Eleventh Circuit's pain standard and sufficiently articulated why she discredited Plaintiff's subjective testimony. (R. 23-25).

---

[4] Plaintiff records from after the relevant period note a lumbar spine x-ray done in July 2020 that revealed mild spondylosis. (R. 523). However, this imaging occurred five years after the date last insured and does not indicate that during the relevant period there was a medically determinable impairment. The ALJ notes that this is especially true because in 2020 the spondylosis was only mild. (R. 24).

**VI.     Conclusion**

The court concludes that the ALJ's determination that Plaintiff is not disabled is supported by substantial evidence and the proper legal standards were applied in reaching this determination. The Commissioner's final decision is therefore due to be affirmed.  A separate order in accordance with this memorandum of decision will be entered.

**DONE** and **ORDERED** this August 10, 2023.

R. DAVID PROCTOR
UNITED STATES DISTRICT JUDGE